Estate of Alexander J. Tutundgy, Deceased, Charles Tutundgy and Mary Tutundgy, Executors v. Commissioner.
Estate of Tutundgy v. Commissioner
Docket No. 64710.
United States Tax Court
T.C. Memo 1958-57; 1958 Tax Ct. Memo LEXIS 174; 17 T.C.M. (CCH) 292; T.C.M. (RIA) 58057; April 9, 1958
*174 Neilson Olcott, Esq., and Helen L. Kirby, Esq., for the petitioners. Clarence P. Brazill, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in estate tax of $32,637.26. The question for decision is whether the Commissioner properly disallowed certain deductions for claims against the estate. Findings of Fact The stipulated facts are so found and the stipulation together with the pertinent exhibits are included herein by this reference. Alexander Tutundgy (hereafter called the decedent) died July 21, 1952. The estate tax return was filed October 20, 1953, with the director of internal revenue, Brooklyn, New York. The deceased immigrated to the United States in 1912 from Syria. He was followed a year or so later by his mother, his sister Mary and his brother Charles. They lived in one household. In 1919 Charles, Mary and the deceased, who was the eldest of the three, formed a partnership for the manufacture of ladies lingerie. Each had a onethird interest in the partnership. No records of the original capital invested were kept. Neither have individual capital accounts *175 been maintained on the books. The partnership continued without interruption till decedent's death in 1952. Sometime in 1929 decedent approached his partners and disclosed his wish to go into a real estate venture. Neither Charles nor Mary wanted the partnership to participate but it was arranged that decedent could go into the venture "on his own" and withdraw partnership funds for that purpose. Decedent, beginning in 1929 and ending in 1937, withdrew $63,521.70 from the partnership for his real estate venture. In 1929 deceased also asked his partners to engage with him in advancing funds to the Needle Art Corporation, a business unconnected with the partnership. They refused, but assented to his use of partnership funds for that purpose. He withdrew $24,700.79 from the partnership for use in this venture over the years 1929 through 1934. Repayments reduced the balance due from decedent to the partnership for these withdrawals to $17,440.79. In 1936 decedent told Mary and Charles of his intention to marry and that it would be necessary for him to use partnership funds to finance the wedding and honeymoon. In this connection, for his own personal expenses and also of his wife, *176 decedent used partnership funds to the extent of $22,219.49. About the time of his marriage in 1936, decedent asked his sister Mary for a bracelet which had originally belonged to their mother so that his prospective wife could make a "show off" of the article of jewelry on their honeymoon. Mary's mother had presented the bracelet to her about 1925. Some diamonds costing approximately $5,000 were purchased with partnership funds and set in the bracelet about 1926. Mary turned the bracelet over to deceased who in turn gave it to his wife to wear. Deceased and his wife were divorced in 1938 after acrimonious divorce proceedings. The divorced wife retained the jewelry. Mary never requested the deceased to return the bracelet to her and no attempt was ever made to recover the bracelet from the divorced wife. From the time of the divorce in 1938 until his death in 1952 decedent lived in the household with Mary and the family of his brother Charles. Charles and Mary are the executors of the estate of the deceased and the sole beneficiaries under his will. On the estate tax return deductions were claimed on Schedule K, among others, as follows: Item 3
Mary Tutundgy - Bracelet
loaned to deceased at time
of marriage and never re-
turned listed herein at its
present replacement value
of
$ 9,000.00
Item 4
Charles Tutundgy and Mary
Tutundgy as surviving part-
ners of Tutundgy Brothers
- Moneys of partnership ex-
pended for deceased in con-
nection with his marriage,
honeymoon and divorce dur-
ing the period April 1936
and November 1938, which
were never repaid by de-
ceased who did guarantee
repayment
22,219.49
Item 5
Charles Tutundgy and Mary
Tutundgy as surviving part-
ners of Tutundgy Brothers
- Moneys of partnership ex-
pended by deceased in a
venture in Needle Art Corp.
and a loan to one Nicholas
G. Gabriel (Maloof) result-
ing in loss, which deceased
guaranteed to repay to the
partnership
17,251.13
Item 6
Charles Tutundgy and Mary
Tutundgy as surviving part-
ners of Tutundgy Brothers
- Moneys of partnership ex-
pended by deceased in a
real estate mortgage ven-
ture with respect to Tutbro
Realty Corp. and TMT
Realty Corp. resulting in a
loss which deceased guaran-
teed to repay to the part-
nership
60,000.00 *
Total
$108,470.62
*177 The Commissioner disallowed these claimed deductions "in the absence of legal proof." We find as an ultimate fact that decedent was indebted to the partnership at the time of his death in the amount of at least $99,660.28 made up of unrepaid withdrawals from the partnership as follows: Personal expenses in connection with
marriage
$22,219.49
Needle Art venture
17,440.79
Real estate venture
60,000.00
$99,660.28
Opinion The Commissioner's argument with respect to decedent's withdrawals of partnership funds is twofold - first, that the amounts have not been proven to be legally enforceable debts of the deceased and second, if they are held to be debts, they are barred by the statute of limitations. With respect to the first phase of the argument we only comment that whatever difficulty there is, arises from the informality of the books and records of the partnership. We think the record establishes that the withdrawals made by decedent constituted bona fide indebtedness owing by him to the partnership at *178 the time of his death and have so found. See . We also hold that the debts are not barred by the statute of limitations. The partnership subsisted uninterruptedly from 1919 until decedent's death in 1952. No accounting was ever had among the partners and, as the Commissioner points out on brief, it is settled that a partner may not maintain an action at law against co-partners on a claim arising from partnership business until there has been a full accounting. . Thus, there never having been an accounting and there apparently having been no occasion for demanding an accounting, the decedent's partners had no cause of action against him for the indebtedness based on the withdrawals which could be barred by the statute. The Commissioner seeks to escape the effect of this rule by arguing that the claim did not arise from partnership business. We think it did so arise. It was based on the withdrawal of partnership funds, and while such funds were used by decedent for his own purposes, we do not think that fact divorces the claimed indebtedness from the business of the partnership. It *179 is the indebtedness to the partnership itself, and not the use to which the borrowed money was put, which is the basis of the claim. We hold the Commissioner erred in disallowing claims against the estate based on withdrawals of partnership funds in the amount of $99,660.28. With respect to the claim based on the bracelet, Mary, the alleged lender of the bracelet was not called to testify. Her brother Charles related on the witness stand the substance of some conversations between Mary and the decedent in his presence which took place about the time of decedent's marriage in 1936. In part his testimony was as follows: "A. He (the decedent) came to her just a few days before the ceremonies and he asked her if she could borrow her diamond bracelet. She told him you can have it, you see. He took the bracelet, and they went away on his honeymoon. When they came back, his marriage ended in divorce, and there was nothing to repay her back. "And she did not ask him for a receipt, because my brother was depressed all these years until the date of his death. She did not ask him for the replacement of the bracelet. In the first place, she is not missing it. It isn't a utility, a car *180 or refrigerator, or something. But for the sake of her brother, you see, she didn't ask him for it at all." So far as the record goes there is nothing to show what happened to the bracelet from the time of the divorce in 1938 until Mary made claim against decedent's estate in 1952. It could well be that Mary never did intend to press him for its return, or that she in fact forgave whatever claim she may have had. If the transaction in 1936 when the bracelet was turned over to the decedent was a bona fide loan or bailment, Mary's right to retrieve her property certainly crystalized in 1938 when decedent was divorced from his wife. Yet, between 1938 and 1952 she did nothing at all about the matter. Petitioner points to an entry made in decedent's diary as follows: "The bracelet was borrowed from my sister. It was not a gift," as supporting the claim. But it is not shown when the entry was made, or for what purpose. It could well have been written in connection with some proposed property settlement in the divorce. Lacking, as we do, any testimony from Mary with respect to the claim for the bracelet and in view of the long lapse of time between the alleged loan of the bracelet and the *181 assertion of any claim for its return, we hold that petitioners have failed to carry their burden of showing error in the Commissioner's disallowance of this claim. Decision will be entered under Rule 50. Footnotes
*. Though the stipulated figures show withdrawals totalling $63,521.70 in connection with this venture only $60,000 is claimed as a deduction.↩